UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTY LYN TOVES,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.: 19-CV-626-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 9, 11.]** |

　　　This is an action for judicial review of a decision by the Commissioner of Social Security, Andrew Saul ("the Commissioner," or "Defendant"), denying Plaintiff Christy Lyn Toves continuing Social Security Disability Insurance benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for summary judgment, and the matter is before the undersigned Magistrate Judge for preparation of a Report and Recommendation. For the reasons stated below, the Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED.

///
///
///

# I. OVERVIEW OF SOCIAL SECURITY CLAIM PROCEEDINGS

Pursuant to the Social Security Act, the Social Security Administration ("SSA") administers the SSI program. 42 U.S.C. § 901. The Act authorizes the SSA to create a system by which it determines who is entitled to benefits and by which unsuccessful claimants may obtain review of adverse determinations. *Id.* §§ 423 *et seq.* Defendant, as Commissioner of the SSA, is responsible for the Act's administration. *Id.* § 902(a)(4), (b)(4).

## A. The SSA's Sequential Eight-Step Process for Establishing Continuing Disability Under the Act

If a claimant was previously found to be disabled, the ALJ must determine whether the claimant's disability continues through the date of the decision. A Social Security disability claimant is no longer entitled to benefits when substantial evidence demonstrates (1) there has been any medical improvement in the claimant's impairment and (2) the claimant is now engaged in substantial gainful activity. *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016).

The SSA employs a sequential eight-step evaluation process to determine whether a claimant continues to be disabled within the meaning of the act. 20 C.F.R. § 404.1594.

At step one, the ALJ considers whether the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled. *Id.* § 404.1594(f)(1). If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). If the claimant does, her disability continues. *Id.* § 404.1594(f)(2).

If the impairment or combination of impairments meets or medically equals the criteria of an impairment, the evaluation proceeds to step three. At step three, the ALJ determines whether medical improvement has occurred. *Id.* § 594(f)(3). Medical

2

improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. *Id.* § 404.1594(b)(1). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step four, the ALJ must determine whether medical improvement is related to the ability to work. *Id.* § 404.1954(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. *Id.* § 404.1594(b)(3). If medical improvement is not related to the claimant's ability to do work, the analysis proceeds to the fifth step. If medical improvement is related to the claimant's ability to do work, the analysis proceeds to the sixth step.

At step five, the ALJ must determine whether an exception to medical improvement applies. *Id.* § 404.1594(f)(5). There are two groups of exceptions. *Id.* § 404.1594(d), (e). If one of the first group of exceptions applies, the analysis proceeds to the next step. If one of the second group of exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step six, the ALJ determines whether all the claimant's current impairments in combination are severe. *Id.* § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven, the ALJ assesses the claimant's residual functional capacity based on the current impairments and determines if she can perform past relevant work. *Id.* § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

At the last step, the ALJ determines whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience. *Id.* § 404.1594(f)(8). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security

Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

**B.      SSA Hearings and Appeals Process**

In accordance with Defendant's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. SSA regulations provide for a four-step process for administrative review of a claimant's application for disability payments. *See id.* §§ 416.1400, 404.900. Once the SSA makes an initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *See id.* §§ 416.1400, 404.900. If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report and submits those documents to one of the SSA's field offices. If the SSA denies the claim, the claimant is entitled to a hearing before an ALJ in the SSA's Office of Disability Adjudication and Review. *Id.* §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. *Id.* § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. *Id.* §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. *Id.* §§ 416.1479, 404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court. *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals

Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II. BACKGROUND

### A. Procedural History

Plaintiff is a 37-year-old woman who alleges she continues to be too disabled to work. (AR 52, 82.) On July 15, 2008, Plaintiff protectively filed for Disability Insurance Benefits pursuant to Title II of the Social Security Act. (AR 82.) In her application, Plaintiff alleged her disability began on May 7, 2008. (AR 82.) On September 17, 2008, the SSA granted her initial application for Disability Insurance Benefits. (AR 26.)

However, on April 14, 2015, the SSA determined that Plaintiff's disability ended on April 1, 2015 due to medical improvement. (AR 26.) On April 24, 2015, Plaintiff filed a request for reconsideration. (AR 94.) On December 18, 2015, the SSA denied Plaintiff's request of reconsideration and discontinued her benefits after determining that she was no longer disabled. (AR 97-116.) On December 29, 2015, Plaintiff requested a hearing before an ALJ, which occurred on December 19, 2017. (AR 120-22.) The ALJ issued an unfavorable decision on February 22, 2018. (AR 21-23.) On April 9, 2018, Plaintiff filed a Request for Review of Hearing Decision claiming that the ALJ erred in finding medical improvement. (AR 197.) On February 5, 2019, The Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision. (AR 1.) On April 3, 2019, Plaintiff filed the Complaint in the instant case seeking review of the ALJ's decision.

### B. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ that she suffers from severe headaches and depression that prevent her from working. (AR 66.) She reported that she experiences on average twelve or more headaches per month, with pain on a scale of one to ten ranging from three to a maximum of nine. (AR 68-69.) She testified that about half of the month she experiences headaches at an eight or nine level. (AR 69.) Plaintiff explained that the headaches come on suddenly and can last up to three days, leaving her with a stiff neck. (AR 66.)

Plaintiff testified that when experiencing severe headaches, she treats or lessens the symptoms by taking medication prescribed by her doctor and laying down in a dark room. (AR 69-70.) She claimed that she spends about half of the daytime hours in bed when she experiences severe headaches. (AR 71.) Plaintiff explained that the severity of the headaches made her sensitive to light and noise and cause feelings of nausea. (AR 70.)

Additionally, Plaintiff testified that she suffered from depression. (AR 74.) During her testimony, Plaintiff reported feelings of hopelessness, mood swings, sleep loss, variable appetite, difficulty getting along with others, and difficulty completing tasks. (AR 75-76.) She also testified that her emotional condition sometimes prevents her from engaging in her day-to-day activities. (AR 76.) Plaintiff testified that while her depression had gotten worse, her severe headaches were the primary issue affecting her ability to work. (AR 30-32.)

**C.     Treating Physician**

William Chapman, M.D. served as Plaintiff's neurologist. Dr. Chapman began treating Plaintiff in 2015 when she reported complaints of headaches, dizziness, and loss of balance. (AR 529.) In February 2015, Dr. Chapman documented that Plaintiff complained of daily headaches that were primarily generalized. (*Id.*) In March 2015, Dr. Chapman documented that Plaintiff continued to complain of difficulties with thought, headaches, dizziness, and left-sided numbness. (AR 531.) In April 2015, Dr. Chapman noted that Plaintiff had chronic daily headaches, but medications had not been effective. (AR 533, 750-51.) During a follow-up appointment in May 2015, Dr. Chapman increased Plaintiff's dosage of Topamax after she reported that the medication had been slightly helpful in alleviating her headache pain. (AR 745.) In June 2015, Dr. Chapman's treatment notes indicated that Plaintiff was unchanged with regard to her complaints of dizziness, headaches, loss of balance. (AR 739-740.) In December 2015, Plaintiff reported increased dizziness and unsteadiness and worsening migraine headaches. (AR 800.) In February 2016, Dr. Chapman diagnosed Plaintiff with headaches and "[m]igraine, unspecified, not intractable, without status migrainuous." (AR 803.) From August 2016 to November 2016,

Dr. Chapman's treatment notes indicated that Plaintiff continued to have headaches and neck pain. (AR 804, 806.) In September 2017, Dr. Chapman completed a Headache Questionnaire in which he opined that Plaintiff had twelve headaches per month that would result in work interruptions and would require her to leave work for the rest of the day despite being prescribed medication. (AR 845.)

**D.    Examining Physician**

On February 18, 2015, Mounir Soliman, M.D. performed a psychiatric consultative evaluation where he diagnosed Plaintiff with Major Depressive Disorder with psychotic features. (AR 543, 546.) During the evaluation, Plaintiff reported experiencing sadness, lack of energy, lack of concentration, and feelings of paranoia. (AR 544.) Dr. Soliman noted that Plaintiff had been receiving treatment in the form of therapy and medication, but she was currently in the process of getting a new psychologist and psychiatrist and was not taking medication at the time. (*Id.*) Dr. Soliman reported that Plaintiff got along well with her family, friends, and neighbors and that she was pleasant and cooperative during the evaluation. (AR 545.) However, Dr. Soliman also reported that Plaintiff's mood was depressed and she displayed significant symptoms of decreased concentration and decreased energy. (AR 546.)  Dr. Soliman opined that Plaintiff could do simple repetitive tasks, but could not interact with the public, co-workers, and supervisors, and could not withstand the pressures associated with an eight-hour workday and day-to-day activities. (AR 547.)

**E.    Reviewing Physicians**

Dr. Minh Vu, M.D. served as a medical expert at Plaintiff's hearing. (AR 52.) During Dr. Vu's testimony, he opined that the record as a whole did not objectively establish or support Plaintiff's subjective claim that she experienced headaches to the degree or frequency claimed. (AR 62.) Dr. Vu explained that there was a *subjective* complaint of headaches in Dr. Chapman's notes, but otherwise the lack of evidence in the record as a whole did not support the frequency or severity of Plaintiff's subjective complaint. (AR 58.) Dr. Vu stated that Plaintiff did have headaches, but the severity is not supported by

evidence in the whole record to conclude that she had headaches that sufficiently limit her ability to function. (AR 61.)

Jennifer Duffy, Ph.D. served as a consulting psychologist and conducted a mental residual functional capacity assessment and psychiatric review technique. (AR 660, 664.) In her evaluation, she found no significant limitations in Plaintiff's understanding and memory or sustained concentration of persistence. (AR 660.) In her assessment of Plaintiff's capability of social interaction and adaptation, Dr. Duffy found insignificant to moderate limitations. (AR 661.) Dr. Duffy opined that in the totality of the evidence, Plaintiff may have some difficulty completing a normal eight-hour workday without significant interruption from her psychologically based symptoms, but not to the extent that she is precluded from working. (AR 662.)

Anna Franco, Psy.D. served as the consulting psychiatrist and conducted a mental residual functional capacity assessment and a psychiatric review technique. (AR 567, 579.) In her evaluation, she found no significant limitations in Plaintiff's understanding and memory or sustained concentration and persistence. (AR 579.) Additionally, Dr. Franco found insignificant to moderate limitations in Plaintiff's capability of social interaction and adaptation. (AR 580.) Dr. Franco opined that Plaintiff had the ability to sustain a normal work week and adapt to work-related challenges, but she would require limited public contact. (*Id.*)

**F.   ALJ's Findings**

At step one of the eight-step sequential evaluation process described above, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 17, 2008. (AR 26.)

At step two, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step three, the ALJ found medical improvement occurred on April 1, 2015. (AR 28.)

At step four, the ALJ found Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's residual functional capacity. (AR 29.) Since her medical improvement was related to the ability to work, the analysis proceeded to step six.

At step six, the ALJ found, since April 1, 2015, Plaintiff had continued to have a severe impairment or combination of impairments. (*Id.*)

At step seven, the ALJ found that since April 1, 2015, Plaintiff had been unable to perform past relevant work. (AR 37.)

At step eight, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity based on impairments since April 1, 2015 and found that Plaintiff had been able to perform a significant number of jobs in the national economy. (*Id.*)

### III. STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is such relevant evidence, based on the record as a whole, as a reasonable mind might accept as adequate to support a conclusion. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.'" *Biestek*, 139 S. Ct. at 1154. "Substantial evidence, [the Supreme] Court has said, is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of SSA*, 574 F.3d 685, 690 (9th Cir. 2009).

### IV. DISCUSSION

Plaintiff challenges the ALJ's adverse decision on the ground that the ALJ erred in evaluating the medical opinion evidence. First, Plaintiff contends the ALJ's decision to discount Dr. Chapman's opinion and assign great weight to Dr. Vu's opinion was not

supported by substantial evidence. Second, Plaintiff contends the ALJ's decision to assign significant weight to the opinions of Dr. Duffy and Dr. Franco and discount Dr. Soliman's opinion was not supported by substantial evidence. The Court addresses each assignment of error in turn.

**A.   Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence**

Plaintiff argues that ALJ lacks sufficient evidentiary support to justify the assignment of weight and discounting of the treating and examining physicians' opinions. Defendant contends that the ALJ acted reasonably and provided specific and legitimate reasons for his assignment of weight and discounting of the treating and examining physicians' opinions. This Court agrees with Defendant.

**1. Legal Background: Medical Opinion Evaluation**

When evaluating applications filed before March 27, 2017, the ALJ must evaluate all medical opinions, and articulate reasons for the weight given to the medical source opinions. 20 C.F.R § 416.927(c)(2). As a general rule, more weight is given to the opinion of the treating sources than to the opinions who did not treat the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If a treating source opinion is both "well supported by medically acceptable clinical and laboratory techniques" and is "not inconsistent with other substantial evidence in the case record," that opinion is given "controlling weight." 20 C.F.R § 416.927(c)(2). However, unless controlling weight is assigned to the treating source opinion, the ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford any medical opinion.

These factors include: (1) the length of the treatment relationship and the frequency of examination by the treating physician; (2) the nature and extent of the treatment relationship between the patient and the treating physician; (3) the supportability of the physician's opinion with medical evidence; (4) the consistency of the physician's opinion with the record as a whole; (5) the specialization of the medical source opinion; and (6) other factors raised by the parties. *Id*. Further, in cases where a treating doctor's opinion is

contradicted by another doctor's opinion, the ALJ may reject or assign little weight to the treating doctor's opinion only by providing "specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d, 995, 1012 (9th Cir. 2007). The ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

### 2. ALJ Properly Discounted Dr. Chapman's Medical Opinion Concerning Headache Limitations

The ALJ declined to assign controlling weight to Dr. Chapman's opinion concerning the frequency and severity of Plaintiff's headaches after finding the opinion was not consistent with the objective medical evidence in the record as a whole. Instead, the ALJ assigned little weight to Dr. Chapman's opinion after considering the frequency of treatment and the supportability and consistency of Dr. Chapman's medical opinion with the objective evidence of record.

In his assessment of weight, the ALJ considered Dr. Chapman's opinion that Plaintiff continued to average twelve headaches per month that would result in work interruptions. (AR 34, 845.) The ALJ questioned this finding given that Dr. Chapman's own neurology records and the overall record did not support such reported frequency or severity. (AR 34.) The ALJ found that inconsistencies such as six-month intervals between follow up treatments and a lack of emergency related services were contrary to the finding that Plaintiff suffers from an average of twelve severe headaches per month. (*Id.*). The ALJ reasoned that if Plaintiff experienced twelve headaches per month, often at an eight or nine on the pain scale, she would have sought treatment more frequently. (AR 32.) The ALJ reasoned that Plaintiff's lack of follow-up treatment from June 2015 to December 2015 suggested that the medications were providing some relief or that her symptoms were not so severe as to require medical intervention. (*Id.*) The ALJ also noted that it was inconsistent that Plaintiff has never required or sought any emergency related services for headaches, despite alleging their being at an eight or nine in severity half the days of the

month and can have a duration of several days. (*Id.*) At that frequency and duration, Plaintiff would virtually be incapacitated for the entire month, each and every month.

The ALJ acknowledged that while the objective medical record showed Plaintiff's *subjective* complaints of headaches, there was no documented *objective* basis to support the frequency or severity of the headaches in the record as a whole. (AR 32.) The ALJ found that while the neurology records showed complaints of ongoing headaches, the only description of such headaches were found in Dr. Chapman's February 2015 treatment notes, which describe the Plaintiff's headaches as primarily generalized. (AR 32, 756.)

Further, the ALJ noted that in the six-month gap between neurology treatments, Plaintiff sought mental health related treatment, but the mental health records only reported headache related pain on two occasions. (AR 32.) Specifically, the ALJ referenced June 2015 treatment records that mentioned Plaintiff's taking Topamax for headaches and May 2016 treatment records where Plaintiff was noted to have reported headaches in the morning. (AR 32, 816, 826.) The ALJ also pointed to Plaintiff's ongoing primary care records, which made no mention of headaches during the six-month gap during which the Plaintiff was not being seen by a neurologist. (AR 32, 679-766, 767-96.) The ALJ found that outside of Dr. Chapman's reports, there were no other significant reports as to headache related pain that would support Dr. Chapman's assessment that Plaintiff experienced twelve severe headaches per month. (AR 32.)

Given the reasons detailed by the ALJ, the ALJ reasonably determined that the only basis for Dr. Chapman's claim of twelve severe headaches per month was Plaintiff's subjective reporting to Dr. Chapman and testimony at the ALJ hearing. The Ninth Circuit has concluded, that where the record lacks sufficient medical evidence supporting the severity of headaches a claimant alleges, the ALJ properly rejects an opinion about the number of headaches that relies exclusively on a claimant's own testimony. *Britton v. Colvin*, 787 F.3d 1011 (9th Cir. 2015). In *Britton*, the Ninth Circuit noted the record had "no independent medical evidence establishing" the severity of headaches the claimant alleged, and that the ALJ properly rejected a doctor's opinion about the number of

headaches because it "relied exclusively on Britton's testimony regarding the frequency, duration, and intensity of her migraines." *Id.* at 1013-14. Here, like in *Britton*, the ALJ properly discounted Dr. Chapman's claim about the number of Plaintiff's headaches because he relied exclusively on Plaintiff's own reports about the frequency, duration, and intensity of her migraines.

The ALJ acted reasonably in assigning little weigh to Dr. Chapman's opinion because of its lack of support or consistency with the record as a whole. In light of the ALJ's detailed findings concerning Dr. Chapman's opinion, the ALJ did not err in assigning great weight to Dr. Vu's opinion after considering his review of the entire record and his opinion's consistency with the record as a whole. (AR 34.) Dr. Vu's role was to provide the ALJ his assessment based on the entire record, which was the same standard by which the ALJ had to render his decision. Dr. Vu opined in his testimony that the record did not objectively establish or support that Plaintiff experiences headaches to the degree or frequency claimed. (AR 62.) Dr. Vu explained that there was a subjective complaint of headaches, but there was also a lack of documented evidence to support the frequency given Plaintiff's lack of emergency room and doctor visits. (AR 58.) Dr. Vu stated that while Plaintiff may suffer from headaches, the severity is not supported by the evidence in the file to conclude that she has headaches that sufficiently limit her ability to function. (AR 61.) Dr. Vu concluded that the record did not support Plaintiff's claims of experiencing headaches to the degree or frequency that would interfere with work. (AR 58.)

Ultimately, in the proverbial forest that was Plaintiff's entire medical record, Dr. Vu was able to review the entire forest while Dr. Chapman only saw a single tree in the form of Plaintiff's subjective reports to him. The ALJ's responsibility here was to credit the medical opinion that was most supported by the entire record, and he found that opinion was Dr. Vu's. The ALJ then gave specific reasons for crediting Dr. Vu over Dr. Chapman, and the record supports those reasons. Accordingly, the ALJ properly weighed the medical opinion evidence concerning the frequency and severity of Plaintiff's headaches and

provided specific and legitimate reasons for assigning little weight and discounting Dr. Chapman's medical opinion.

### 3. ALJ Properly Discounted Dr. Soliman's Medical Opinion Concerning Mental Health Limitations

The ALJ declined to assign controlling weight to Dr. Soliman's opinion concerning mental health limitations given its inconsistency with the evidence of record. Instead, the ALJ assigned little weight to Dr. Soliman's examining source opinion after considering the nature and extent of the treatment relationship and the consistency and supportability of Dr. Soliman's opinion when compared to the objective evidence in the record.

In his assessment of weight, the ALJ considered Dr. Solimon's opinion diagnosing Plaintiff with major depression with psychotic features. (AR 33, 546.) The ALJ found Dr. Soliman's opinion was unsupported by the evidentiary record since there was no evidence to support Plaintiff reporting any significant paranoia related symptomology to any of her other treating providers. (AR 33, 574.) The ALJ noted that outside of Dr. Soliman's one-time examination, there were no other reports of paranoia found elsewhere in the record. (AR 33.) The ALJ also found that outside of depressed, anxious, or angry moods, ongoing mental status examinations throughout the treatment record had essentially been normal. (*See, e.g.*, AR 33-34, 599-600, 808, 810, 812, 814, 816, 818, 820, 822, 824, 826, 828, 830, 832.) The ALJ also pointed to Plaintiff's January 2016 primary care records that indicated Plaintiff scored a perfect 30 out of 30 on a Mini-Mental Status Examination showing her mental status to be normal. (AR 34, 712.)

The ALJ acknowledged that the record showed that Plaintiff suffered from mental impairments and had received mental treatment in the form of medication management, but the ALJ found nothing in the record to indicate signs of significant exacerbations or deterioration of her condition. (AR 33.) Although the ALJ recognized that Plaintiff's February 2015 psychological consultation examination reported lack of energy and concentration, paranoia, and feelings of hopelessness and helplessness, the ALJ also noted that Plaintiff admitted that she was not taking any psychiatric related mediations at the

time. (*Id.*) Further, the ALJ reasoned that while Plaintiff had normal "up and downs," she had experienced no hospitalizations or required any emergency-related health services that would indicate she was suffering from severe mental impairments. (*Id.*) The ALJ conceded that Plaintiff was noted to present with an anxious or depressed mood at times, but there was no evidence of any documented panic attacks or emergency-related services. (AR 33, 597-601, 808-39.)

Next, the ALJ evaluated Dr. Soliman's opinion that Plaintiff was unable to interact with co-workers, supervisors, and the public and generally unable to withstand the stress and pressures associated with an eight-hour workday. (AR 34-35.) The ALJ found that Dr. Soliman's assessment of Plaintiff's inability to interact with others was inconsistent with the record given Plaintiff reporting to Dr. Soliman that she got along well with family, friends, and neighbors. (AR 33, 545.) The ALJ appropriately noted that while Plaintiff had alleged impulsivity, anger management issues, and difficulty getting along with others, the record did not show that she had been highly antagonistic, uncooperative, or hostile when presenting for treatment. (*Id.*) Furthermore, in response to Dr. Soliman's claim that claimant was incapable to interaction with supervisors, the ALJ pointed to Plaintiff's initial report of having no difficulties getting along with authority figures. (AR 35.)

To further support his discounting of Dr. Soliman's opinion, the ALJ also noted that Dr. Soliman's opined GAF score of 50 was inconsistent with the record as a whole, since a GAF score of 50 suggests functional limitations more serious than those reflected in the residual functional capacity stipulated to by Plaintiff's counsel during Dr. Vu's testimony.[1] (AR 34, 35, 73.)

---

[1] Global Assessment of Functioning (GAF) in the range of 50 and under is consistent with "serious" symptoms or any serious impairment in limitations in social, occupational, or school functioning Diagnostic and Statistical Manual of Mental Disorders, 4th ed. A GAF over 50 is generally consistent with the ability to perform sustained, full time competitive employment. However, a GAF is not precise functional assessment, which describes specific mental work related limitations. A GAF between 41-50 can be based upon subjective, unsubstantiated complaints such as having no friends, inability to hold a job,

Based on the foregoing, substantial evidence supports the ALJ's finding that Dr. Soliman's one time examination did not align with the objective medical evidence in the record. (AR 35.) The ALJ reasonably concluded that Dr. Soliman's opinion appeared to be an overestimate of the Plaintiff' functional limitations and was inconsistent with evidence of record concerning her ability to be able to withstand workplace stresses. (*Id*.) The ALJ accordingly did not err in assigning little weight to Dr. Soliman's opinion concerning Plaintiff's mental health limitations given the opinion's lack of support or consistency with the evidentiary record. Thus, considering the ALJ's detailed findings for discounting Dr. Soliman's opinion, the ALJ did not err in assigning significant weight to Dr. Duffy and Dr. Franco's medical opinions.

In evaluating reviewing psychologists Dr. Duffy and Dr. Franco's opinions, the ALJ considered their review of the entire medical record and the opinions' general consistency with the overall treatment record. (AR 35.) Dr. Duffy and Dr. Franco opined that Plaintiff had the ability to adapt to routine changes in a work setting and sustain appropriate interaction with coworkers and supervisors, but she would require limited public contact. (AR 34, 577, 662.) Dr. Duffy found that Plaintiff may have some difficulty managing the stress of employment, especially if it involves strict quotas, but not to the extent that she

---

alleged panic attacks, hallucinations, obsessions, or delusions (which have not been observed by the mental health provider), sleep problems, unemployment, inability to obtain health insurance, recent deaths, family relationship problems, or sickness, housing problems, financial problems, substance abuse, and/or criminal problems. The score can be based on behaviors which have little or no relationship to occupational functioning (e.g. The Diagnostic and Statistical Manual of Mental Disorders, 4th Ed specifically notes that frequent shoplifting can be a basis for a GAF rating in this range). The GAF under 51 does not have to be based upon actual mental status examination findings or psychological testing. Moreover, low GAF scores alone do not compel finding of disability. *See* 65 Fed Reg. 50746, 50764-65, noting that "[t]he GAF scale does not have a direct correlation to the severity requirement in [SSA] mental disorders listings." To the extent the claimant's GAP scores below 51 might suggest greater functional restrictions than found herein, they are not supported by or consistent with the record as a whole, including objective signs and findings.

would be precluded from performing all work related tasks. (AR 660, 674.) Dr. Franco found that while Plaintiff presented with depression symptoms that appeared slightly greater than non-severe, Plaintiff's overall presentation did not preclude her from work-related functioning. (AR 577.) For the same reasons discussed for assigning little weight to Dr. Soliman's opinion, the ALJ did not err in assigning significant weight to Dr. Duffy and Dr. Franco's opinions given their consistency with the record as a whole. (*Id.*)

For the reasons discussed, the ALJ properly weighed the medical opinion evidence and provided specific and legitimate reasons for his discounting of Dr. Soliman's opinion. Because the ALJ's evaluation of the medical opinion evidence was supported by substantial evidence, the Court should affirm the ALJ's decision by granting Defendant's motion for summary judgment.

**B.     Plaintiff is Not Entitled to Summary Judgment**

Based on the foregoing recommendation that Defendant's Cross-MSJ be GRANTED, this Court necessarily recommends that Plaintiff's MSJ be DENIED.

## V.     CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be DENIED and that Defendant's Cross-MSJ be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that **no later than May 26, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

/ / /
/ / /
/ / /
/ / /
/ / /

1    IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **no later than June 12, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: April 29, 2020

Hon. William V. Gallo
United States Magistrate Judge